IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KAYLE SMITH,
      Petitioner,

vs.                                Case No.:  3:14cv195/MCR/EMT

JULIE L. JONES,[1]
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1).  Respondent filed a motion to dismiss the petition as untimely, with relevant portions of the state court record (doc. 18).  Petitioner filed a response in opposition to the motion (doc. 26).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that all but one of Petitioner's claims should be dismissed.

I.      BACKGROUND AND PROCEDURAL HISTORY

The procedural background of this case is established by the state court record (doc. 18).[2] Petitioner was indicted in the Circuit Court in and for Escambia County, Florida, Case No. 87-94, on one count of first degree premeditated murder and one count of burglary of an occupied dwelling with

---

[1] Julie L. Jones was recently appointed as Secretary for the Department of Corrections and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d).

[2] Hereinafter all citations to the state court record refer to the electronically filed exhibits to Respondent's motion to dismiss (doc. 18) unless otherwise indicated.  Additionally, if a cited page has more than one page number, the court cites to the "Bates stamp" page number.

an assault while armed (*see* Ex. J at 19–20).  By amended indictment returned February 3, 1987, Petitioner was charged with one count of first degree premeditated or felony murder and one count of armed burglary (Ex. B at 162).  The victim was Petitioner's mother.  Petitioner pleaded guilty to first degree felony murder and armed burglary (*see* doc. 18 at 1 n.2).[3]  On December 31, 1987, the court adjudicated Petitioner guilty and sentenced him to life imprisonment on the murder count without the possibility of parole for twenty-five (25) years, and a consecutive term of life imprisonment on the armed burglary count (Ex. B at 170–202, Ex. C).  Petitioner filed a motion for modification of sentence, pursuant to Rule 3.800(b) of the Florida Rules of Criminal Procedure (Ex. C at 211–12). The court denied the motion (*id.* at 213–26).  Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 88-351 (Ex. D).  The appellate court affirmed the judgment per curiam on November 1, 1998, and the mandate issued November 17, 1988 (Ex. G). Smith v. State, 534 So. 2d 403 (Fla. 1st DCA 1988).  On October 24, 1989, the state circuit court modified the judgment as to the burglary count to fifty (50) years of imprisonment, to run concurrently with the life sentence imposed on the murder count (*see* Ex. J at 30).  Petitioner did not appeal the order; therefore, it became thirty days later, on November 24, 1989.  *See* Hampton v. State, 837 So. 2d 611 (Fla. 5th DCA 2003) (absent direct appeal, the judgment and sentence became final 30 days after rendition); Davis v. State, 693 So. 2d 700 (Fla. 2d DCA 1997) (same); Gust v. State, 535 So. 2d 642 (Fla.1st DCA 1988) (same).

No earlier than October 1, 2004, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. H).[4]  On April 4, 2005, the state circuit court dismissed the motion with prejudice (Ex. I).  The court determined that one of Petitioner's claims was waived by entry of his guilty plea (*id.*).  The court determined that the other two claims

---

[3] Petitioner does not dispute that he pleaded guilty to felony murder and armed burglary.  As Respondent states, the plea proceeding was not transcribed; however, that Petitioner entered a plea to those charges was stated on the record during the penalty proceedings (*see* Ex. A at 4; Ex. B at 171) and the sentence modification proceeding (Ex. C at 216–17).  It is also reflected in the judgment (Ex. C) and the docket sheet (*see* Ex. PD).

[4] The certificate of service on Petitioner's Rule 3.800 motion clearly indicates it was filed in October of 2004, but the exact day is illegible (*see* Ex. H).  The court gives Petitioner the benefit of the doubt that he filed the motion on the first day of October of 2004.

were cognizable in a Rule 3.850, not a Rule 3.800 motion, but even if the claims were presented in a Rule 3.850 motion, the motion would be untimely (*id.*).

On February 23, 2011, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. J at 1–12).  The state circuit court summarily denied the motion in an order rendered April 1, 2011 (*id.* at 13–17).  Petitioner appealed the decision to the First DCA, Case No. 1D11-2278 (Ex. K).  On August 2, 2011, the First DCA affirmed per curiam without written opinion (Ex. M).  Smith v. State, 67 So. 3d 206 (Fla. 1st DCA 2011) (Table). The mandate issued August 30, 2011 (*id.*).

On August 15, 2011, Petitioner filed a second Rule 3.850 motion (Ex. N at 1–6).  The state circuit court summarily denied the motion on September 1, 2011 (*id*. at 26–29).  Petitioner appealed the decision to the First DCA, Case No. 1D12-126 (Ex. N at 75).  On March 26, 2012, the First DCA affirmed per curiam without written opinion (Ex. O).  Smith v. State, 88 So. 3d 938 (Fla. 1st DCA 2012) (Table).  The mandate issued June 14, 2012 (Ex. Q).

On June 25, 2012, Petitioner filed a habeas petition in the Supreme Court of Florida, Case No. SC13-223 (Ex. R).  On April 19, 2013, the state supreme court dismissed the petition as unauthorized (Ex. S).  Smith v. State, 116 So. 3d 385 (Fla. 2013) (Table).

Petitioner filed the instant habeas action on April 10, 2014 (doc. 1 at 23).[5]  He raises the following grounds for relief:

> Ground One:  "The indictment was subjected to an unauthorized amendment which under Florida Rules of Procedure voided the charging instrument, therefore violating the constitutional provision which requires an indictment for capital crimes."

> Ground Two:  "Denial of due process in postconviction proceedings for failure to comply with rule 3.850(c) d) [sic] which requires the court to produce the document that 'conclusively demonstrates' that I am not entitled to relief.  Instead, Judge Geeker used a copy of the Amended Indictment to conclusively show that the indictment was not amended."

> Ground Three:  "I asked for a lawyer and later a friend of the family and detective Marsha Smith induced me to relent by stating if I wanted her to help me I had to tell

---

[5] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

her what happened. I broke down and after confessing Det. Enterkin restarted the tape and proceeded to go over it again."

Ground Four: "I was mentally incompetent due to traumatic stress, the amount of psychotropic/anti-psychotic medication, and pled guilty in the hopes that the court would fry me. I was on suicide watch for that very attitude and subsequently Baker Acted after conviction."

Ground Five: "I am actually innocent of the crime as charged. I was not spatially present at the time of the offense. Petitioner's guilty plea was irrational and involuntarily induced due to a mental imbalance and feelings of guilt that were out of proportion to the reality of the situation. Co-defendant's confession (initial) supports this reality."

Ground Nine: "Trial counsel was ineffective."

Ground Ten: "The State, the court, and defense attorney failed to honor Petitioner's right to be present during re-judication [sic] and re-sentence [sic], thus denying Petitioner the opportunity to withdraw the plea if such conviction and sentence was reached in an unlawful or illegal manner, or allow Petitioner to voice objection and/or present mitigating circumstances that may have modified Petitioner's sentence or cast doubt on evidence used at conviction."

Ground Eleven: "The cumulative effect of these errors and more cast considerable doubt that Petitioner was afforded a fair judicial process. Petitioner asserts that from the beginning and throughout the process, the State, the court, and defense counsel took advantage of the fact that Petitioner suffered from acute post-traumatic stress/ delusions of guilt, and was 'forced' to take very high doses of anti-psychotic medication to quiet auditory/visual hallucinations, and reduce suicidal tendencies, and took 'shortcuts' in the judicial process."

Ground Twelve: "Parole board's arbitrary addition of 120 months for offense severity constructively amends and extends the legislative intent of sentencing statute, subjecting the Petitioner to a more onerous sentence than originally imposed."

Ground Thirteen: "Petitioner re-butted the State's presumption of in-personam jurisdiction, and the State merely quarrelled [sic] with Petitioner's rebutter [sic] without producing the required evidence to show Petitioner's liability to its corporate bylaw (statutes) which violates Petitioner's right to due process of law."

(doc. 1 at 5–23).[6]

II.    ANALYSIS

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment.  The limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

Respondent argues that Petitioner's § 2254 petition should be considered as a whole, and the limitations period calculated from the finality date of the judgment of conviction, pursuant to § 2244(d)(1)(A) (*see* doc. 18 at 3–4).  Respondent argues the judgment became final prior to the effective date of the AEDPA; therefore, Petitioner had one year from that date, or until April 24, 1997, to file his § 2254 petition (*id.*).  *See* Guenther v. Holt, 173 F.3d 1328, 1331 (11th Cir. 1999) ("For prisoners whose convictions became final prior to the effective date of the AEDPA, the one-year statute of limitations instituted by the AEDPA began to run on its effective date, *i.e.*, April 24, 1996."); Wilcox v. Fla. Dep't of Corr., 158 F.3d 1209 (11th Cir. 1998).

Petitioner contends the appropriate statutory trigger for the limitations period is § 2244(d)(1)(D) (*see* doc. 1 at 22).  He states, "April 19, 2013, is the last date upon which the factual

---

[6] In Petitioner's response to the motion to dismiss, he expressly withdrew Grounds Six, Seven, and Eight of his habeas petition (*see* doc. 26 at 6).

predicate of the claim could have been cured [sic]." (*id.*).  He continues, "If a person is not competent to proceed in the time frame necessary, competency and legal comprehension came way beyond this one year time frame." (*id.*).

Where a petition presents a claim or claims that require application of § 2244(d)(1)(B), § 2244(d)(1)(C), or § 2244(d)(1)(D), calculation of the federal statute of limitations requires a claim-by-claim approach to determine timeliness.  *See* Zack v. Tucker, 704 F.3d 917, 918. 926 (11th Cir. 2013) (in a multiple trigger case, the federal statute of limitations requires a claim-by-claim approach to determine timeliness).  The court will thus individually consider each of Petitioner's claims to determine timeliness.

 A. Grounds One, Three, Nine, Ten, Eleven, and Thirteen[7]

  Ground One:  "The indictment was subjected to an unauthorized amendment which under Florida Rules of Procedure voided the charging instrument, therefore violating the constitutional provision which requires an indictment for capital crimes."

  Ground Three:  "I asked for a lawyer and later a friend of the family and detective Marsha Smith induced me to relent by stating if I wanted her to help me I had to tell her what happened.  I broke down and after confessing Det. Enterkin restarted the tape and proceeded to go over it again."

  Ground Nine:  "Trial counsel was ineffective [for failing to seek suppression of Petitioner's statements to police and for failing to seek dismissal of the amended indictment]."

  Ground Ten:  "The State, the court, and defense attorney failed to honor Petitioner's right to be present during re-judication [sic] and re-sentence [sic], thus denying Petitioner the opportunity to withdraw the plea if such conviction and sentence was reached in an unlawful or illegal manner, or allow Petitioner to voice objection and/or present mitigating circumstances that may have modified Petitioner's sentence or cast doubt on evidence used at conviction."

  Ground Eleven:  "The cumulative effect of these errors and more cast considerable doubt that Petitioner was afforded a fair judicial process.

---

[7] Although the court is considering each of Petitioner's claims individually, it is consolidating its analysis of some claims for organizational purposes.

> Petitioner asserts that from the beginning and throughout the process, the State, the court, and defense counsel took advantage of the fact that Petitioner suffered from acute post-traumatic stress delusions of guilt, and was 'forced' to take very high doses of anti-psychotic medication to quiet auditory/visual hallucinations, and reduce suicidal tendencies, and took 'shortcuts' in the judicial process."
>
> Ground Thirteen: "Petitioner re-butted the State's presumption of in-personam jurisdiction, and the State merely quarrelled [sic] with Petitioner's rebutter [sic] without producing the required evidence to show Petitioner's liability to its corporate bylaw (statutes) which violates Petitioner's right to due process of law."

The factual predicate underlying each of these claims was discoverable, with due diligence, prior to the finality date of the judgment of conviction (i.e., November 24, 1989), and well prior to the effective date of the AEDPA, April 24, 1996. Petitioner did not file his § 2254 petition within one year from that date; therefore, the claims asserted in Grounds One, Three, Nine, Ten, Eleven, and Thirteen are untimely.[8]

B.    Ground Two

In Ground Two, Petitioner alleges he was denied due process in the Rule 3.850 proceeding, because the state post-conviction court failed to comply with the provisions of Rule 3.850 requiring it to attach to its dispositional order documents that conclusively demonstrated that Petitioner was not entitled to relief.

It is well established in the Eleventh Circuit that a prisoner's challenge to the process afforded him in a state post-conviction proceeding does not constitute a cognizable claim for habeas corpus relief, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *See* Alston v. Dep't of Corr., Fla., 610 F.3d 1318, 1326 (11th Cir. 2010) (holding that habeas petitioner's claim—that the state post-conviction court acted unreasonably when it determined he was competent to waive his post-conviction proceedings and that

---

[8] Section 2244(d)(2) provides for tolling of the one-year period during the time a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.  28 U.S.C. § 2244(d)(2).  Petitioner did not have any post-conviction applications pending in state court until well after the federal limitations period expired.  Therefore, none of those applications tolled the federal limitations period. *See* Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").

his waiver was valid—was not cognizable on federal habeas review; "[T]he state court finding that Alston was competent to waive his post-conviction proceedings concerns the state's application of its own post-conviction procedure, not the legality of Alston's detention."); <u>Carroll v. Sec'y, DOC, Fla. Attorney Gen.</u>, 574 F.3d 1354, 1366 (11th Cir. 2009) (holding that habeas petitioner's claim—that the state court violated his due process rights when it summarily denied his post-conviction claim without an evidentiary hearing—did not state a claim on which federal habeas relief could be granted); <u>Anderson v. Sec'y for Dep't of Corr.</u>, 462 F.3d 1319, 1330 (11th Cir. 2006) (same); <u>Quince v. Crosby</u>, 360 F.3d 1259, 1261–62 (11th Cir. 2004) (explaining that "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); <u>Spradley v. Dugger</u>, 825 F.2d 1566, 1568 (11th Cir. 1987) (holding that habeas petitioner's claim that errors in Rule 3.850 proceeding violated his right to due process did not state a basis for habeas relief because the claim "[went] to issues unrelated to the cause of petitioner's detention.").  As the Eleventh Circuit explained in <u>Alston</u>:

> Federal habeas relief is available to remedy defects in a defendant's conviction and sentence, but "an alleged defect in a collateral proceeding does not state a basis for habeas relief."  <u>Quince v. Crosby</u>, 360 F.3d 1259, 1262 (11th Cir. 2004); <u>see also</u> <u>Carroll v. Sec'y, DOC</u>, 574 F.3d 1354, 1365 (11th Cir. 2009) (collecting cases), <u>cert. denied</u>, — U.S. —, 130 S. Ct. 500, 175 L. Ed. 2d 355 (2009).  There is a valid reason behind this principle: "[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment— i.e., the conviction itself—and thus habeas relief is not an appropriate remedy." <u>Carroll</u>, 574 F.3d at 1365.  Furthermore, such challenges often involve issues of state law, and "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  <u>McCullough v. Singletary</u>, 967 F.2d 530, 535 (11th Cir. 1992).

<u>Id</u>. at 1325–26.

Here, Petitioner's claim that the state post-conviction court erred by failing to comply with the procedural provisions of Rule 3.850 in disposing of his motion, challenges only the state's application of its own post-conviction procedure, not the legality of Petitioner's detention. Therefore, it does not state a basis for federal habeas relief.

C.      <u>Ground Four</u>

Petitioner raises both procedural and substantive competency claims in Ground Four. He asserts his trial counsel raised the issue of his sanity at the time of the offense, and his competency to proceed in the criminal proceedings, by filing a motion to appoint an expert (*see* doc. 26 at 4). Petitioner alleges the trial court appointed an expert, but the state court record does not contain the expert's report or a transcript of any competency hearing (*id.*). Petitioner asserts his confession, deposition, guilty plea, and waiver of a jury determination regarding the death penalty were involuntary due to his psychosis, emotional disturbance, and depression, and the influence of psychotropic and antipsychotic medications he was taking at the time (*id.* at 5). He argues, "A substantive competency claim cannot be procedurally defaulted" pursuant to Battle v. United States, 419 F.3d 1292 (11th Cir. 2005).

The Due Process Clause of the Fourteenth Amendment prohibits states from trying or convicting a defendant who is mentally incompetent. *See* Pate v. Robinson, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966). The Supreme Court set the standard to be used in determining mental competency as whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed 2d 824 (1960) (per curiam); Drope v. Missouri, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); *see also* Indiana v. Edwards, 554 U.S. 164, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008).

In Drope, the Court elaborated as follows:

[t]he import of our decision in Pate v. Robinson is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

Drope, 420 U.S. at 180.

The Eleventh Circuit Court of Appeals has applied and expounded upon these standards. "[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be

equated with mental incompetence to stand trial." Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir. 1995) (citation omitted).  A Pate analysis must focus on "what the trial court did in light of what it then knew, [and] whether objective facts known to the trial court were sufficient to raise a bona fide doubt as to the defendant's competency." Fallada v. Dugger, 819 F.2d 1564, 1568 (11th Cir. 1987) (citations omitted).  A petitioner who makes a substantive competency claim, contending that he was tried and convicted while mentally incompetent, "is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence." James v. Singletary, 957 F.2d 1562, 1571 (11th Cir. 1992).  This standard is in contrast to a petitioner who makes a procedural competency claim alleging that the trial court failed to hold a competency hearing after his competency was put at issue.  To prevail on a procedural competency claim, "a petitioner must establish that the state trial judge ignored facts raising a 'bona fide doubt' regarding the petitioner's competency to stand trial." James, 957 F.2d. at 1572 n.15 (citing Fallada, 819 F.2d at 1568).  A petitioner who presents "clear and convincing evidence" which creates a "real, substantial and legitimate doubt" as to his competence is entitled to an evidentiary hearing on his substantive competency claim.  Medina, 59 F.3d at 1106 (quoting James, 957 F.2d at 1573).  However, the standard of proof is high, and "the facts must positively, unequivocally, and clearly generate the legitimate doubt." Card v. Singletary, 981 F.2d 481, 484 (11th Cir. 1992) (quotations omitted). Relevant information may include evidence of a defendant's irrational behavior, demeanor at trial, or prior medical opinion. See Watts v. Singletary, 87 F.3d 1282, 1287 (11th Cir. 1996).

A lifelong history of mental illness and emotional problems does not demonstrate incompetency without a specific showing of how these difficulties generated a substantial doubt as to the defendant's competency at the time in question. See Medina, 59 F.3d at 1106; Card, 981 F.2d at 484.  Similarly, the fact that the accused is undergoing treatment with psychiatric drugs, while relevant, does not alone prove incompetence. See Sheley v. Singletary, 955 F.2d 1434, 1438–39 (11th Cir. 1992).  In order to establish incompetence, evidence must establish that the drugs affected the accused to the point that he could not effectively consult with his attorney and could not understand the proceedings. See id. at 1439.

Procedural competency claims are subject to procedural bars; however, substantive competency claims generally cannot be defaulted. *See* Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1258–59 (11th Cir. 2002); Medina, 59 F.3d at 1107.

The court will first consider Petitioner's substantive competency claim. He is correct that his defense counsel filed a motion on March 10, 1987, requesting appointment of an expert to examine Petitioner to determine whether he was insane at the time of the offense or incompetent to assist counsel in his defense (Ex. B at 163–64). The motion requested that the expert report only to defense counsel (*id.*). The trial court granted the motion and appointed Dr. Dan Overlade to examine Petitioner and provide a report to defense counsel within ten days (*id.* at 165). Petitioner entered his guilty plea on July 1, 1987 (*see* Ex. PD). On July 9, 1987, the court held a penalty phase hearing (Ex. A). At that hearing, defense counsel presented testimony from Dr. Overlade (*see id.* at 45–57). Dr. Overlade testified he was a clinical psychologist, and had examined Petitioner at defense counsel's request on March 16, 1987, and March 20, 1987 (*id.*). Dr. Overlade testified he administered two personality tests, reviewed Petitioner's medical records from the jail infirmary, and reviewed arrest reports, statements of Petitioner and his co-defendant David Pentecost, and statements of witnesses (*id.*). Dr. Overlade testified that the jail records indicated that during the three-month period after Petitioner's arrest in December of 1986, Petitioner inflicted injury upon himself (*id.*). He testified that the medical records indicated Petitioner was depressed, and felt guilt and remorse regarding the murder of his mother (*id.*). Dr. Overlade testified the records reflected Petitioner was administered an antidepressant (Elavil) and antipsychotic medication (*id.*). Dr. Overlade testified that Petitioner reported having auditory and visual hallucinations—several times he reported seeing his mother, having bad dreams about her death, and hearing voices telling him to kill himself and join his mother (*id.*). Dr. Overlade testified that his review of Petitioner's medical records indicated that the jail medical staff had tried a number of antipsychotic medications, but the auditory hallucinations persisted (*id.*). Dr. Overlade also testified that Petitioner reported drinking an amount of alcohol on the night of the murder that, in Overlade's opinion, would have rendered Petitioner unable to conform his conduct to the requirements of the law (*id.*).

Petitioner has failed to meet the high standard of proof necessary for his substantive competency claim to survive. The only evidence of Petitioner's mental state during the underlying

criminal proceedings is Dr. Overlade's testimony at the penalty phase hearing that Petitioner (1) was depressed, felt guilt and remorse, and engaged in self-injurious behavior, (2) was administered an antidepressant and antipsychotic medication, and (3) reported having auditory and visual hallucinations (seeing his deceased mother, having bad dreams about her death, and hearing voices telling him to kill himself and join his mother), with the auditory hallucinations persisting despite the antipsychotic medication.  Dr. Overlade did not testify that Petitioner was mentally incompetent, and there is no evidence that Dr. Overlade determined that Petitioner was incompetent upon his being court-ordered to evaluated Petitioner's competency and his having evaluated Petitioner prior to entry of the guilty plea.[9]   The record evidence certainly does not rise to the level of creating "a real, substantial, and legitimate doubt" about Petitioner's competency at the time he entered his plea.  Further, Petitioner's self-serving and conclusory assertions that he was incompetent are insufficient to show that he could not effectively consult with his attorney and could not understand the proceedings.  Therefore, Petitioner is not entitled to relief on his substantive competency claim.

Petitioner's procedural competency claim, that is, the trial court's alleged failure to comply with state procedural rules governing competency proceedings, is subject to procedural and time bars.  See Lusk v. Singletary, 112 F.3d 1103, 1105 (11th Cir. 1997).  Petitioner could have discovered, with due diligence, the factual predicate of his procedural competency claim prior to the effective date of the AEDPA, April 24, 1996.  Petitioner did not file his § 2254 petition within one year from that date.  Therefore, his procedural competency claim is time-barred.

To the extent Petitioner argues he is entitled to equitable tolling of the federal limitations period due to his mental health condition, he has not shown that his mental condition prevented him from timely filing his § 2254 petition.  "Because the time period specified in 28 U.S.C. § 2244 is a statute of limitations, not a jurisdictional bar, the Supreme Court has held § 2244(d) does not bar the application of equitable tolling in an appropriate case."  Cole v. Warden, Ga. State Prison, 768 F.3d 1150, 1157 (11th Cir. 2014) (citing Holland v. Florida, 560 U.S. 631, 645, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010)). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and

---

[9] As previously noted, Dr. Overlade testified he evaluated Petitioner in March of 1987, and the record indicates that Petitioner entered his plea in July of 1987.

prevented timely filing." Holland, 560 U.S. at 649 (internal quotation marks omitted).  As an extraordinary remedy, equitable tolling is "limited to rare and exceptional circumstances and typically applied sparingly." Cadet v. Fla. Dep't of Corr., 742 F.3d 473, 477 (11th Cir. 2014) (internal quotation marks omitted).  Equitable tolling is assessed on a case-by-case basis, considering the specific circumstances of the subject case.  Hutchinson v. Florida, 677 F.3d 1097, 1098 (11th Cir. 2012); see Holland, 560 U.S. at 649–50 (clarifying "the exercise of a court's equity powers must be made on a case-by-case basis" (internal quotation marks and ellipsis omitted)).  The petitioner has the burden of establishing his entitlement to equitable tolling; his supporting allegations must be specific and not conclusory.  Hutchinson, 677 F.3d at 1099.  "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." Holland, 560 U.S. at 653 (internal citation and quotation marks omitted); see Smith v. Comm'r, Ala. Dep't of Corr., 703 F.3d 1266, 1271 (11th Cir. 2012) (per curiam) (acknowledging petitioners are not required "to exhaust every imaginable option, but rather to make reasonable efforts" (internal quotation marks omitted)).  Determining whether a factual circumstance is extraordinary to satisfy equitable tolling depends not on how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.  Cole, 768 F.3d at 1158 (quotation marks and citation omitted).  An allegation of mental incapacity, without a showing of a causal connection between the incapacity and the failure to timely file a § 2254 petition, does not justify equitable tolling.  See Lawrence v. Florida, 421 F.3d 1221, 1226–27 (11th Cir. 2005).

The court notes that in one of Petitioner's state post-conviction motions, filed in 2011, he alleged he was under the influence of "heavy doses" of antipsychotic and psychotropic medications from December of 1986 (when he was arrested) to April of 1991, and that he was committed to an in-patient psychiatric housing unit for a period of one year in late 1988 (see Ex. J at 5–6).  However, this period of alleged mental incapacity occurred years prior to the effective date of the AEDPA.  Petitioner does not allege he suffered from any period of mental incapacity after late 1989, when he apparently was released from in-patient psychiatric housing.  Moreover, Petitioner does not allege he made any attempt to ascertain the federal deadline or to file his federal petition on time.  Therefore, Petitioner has failed to show he is entitled to equitable tolling of the limitations period.

D.      Exceptions to Time Bar

Petitioner argues he is entitled to review of his claims through several exceptions to the time bar.  Specifically, he contends some of his claims present jurisdictional issues which are not subject to procedural or time bars.  Additionally, he argues he is entitled review of his ineffective assistance of trial counsel ("IATC") claims pursuant to Martinez v. Ryan, 132 S. Ct. 1309 (2012).  Petitioner also asserts he is actually innocent of the felony murder and armed robbery, and is thus entitled to review of his claims pursuant to McQuiggin v. Perkins, 133 S. Ct. 1924 (2013).

1.      Jurisdictional Issues

Petitioner contends some of his claims involve jurisdictional issues which are not subject to procedural bars.  For example, he claims that the indictment was not properly amended under Florida law, which deprived the trial court of jurisdiction to try him on the charges presented in the amended indictment (see Ground One).  He additionally claims that he is a commercial entity or "vessel" over which the State had no personal jurisdiction, and the Uniform Commitment to Custody of Department of Corrections is forged or counterfeit (see Ground Thirteen).

Petitioner provides no authority, and the court has found none, holding that the federal habeas limitations period of § 2244(d)(1) does not apply to petitions alleging jurisdictional defects in the state trial court.[10]  To the contrary, federal courts have dismissed as untimely § 2254 petitions filed outside the one-year limitations period, even though the petitions challenged the state trial courts' jurisdiction to convict and sentence the petitioners.  See Griffin v. Padula, 518 F. Supp. 2d 671 (D.S.C. 2007) (dismissing § 2254 petition as untimely; rejecting petitioner's argument that the time limitations of the AEDPA did not apply to his petition because his petition challenged the state court's subject matter jurisdiction, and explaining, "there is no exception under the AEDPA for subject matter jurisdiction claims"); see also, e.g., Williams v. Jeter, No. 3:12cv387/MW/EMT, 2013 WL 5496790, at *6 (N.D. Fla. Oct. 2, 2013) (unpublished); Joseph v. Tucker, No. 4:12cv119/SPM/CAS, 2012 WL 5381513, at *1 (N.D. Fla. Nov. 1, 2012) (unpublished) (dismissing petition as untimely and finding, "There is no exception to the § 2254 time limitation for claims raising challenges to the state court's

---

[10] Petitioner cites United States v. Cromartie, 267 F.3d 1293 (11th Cir. 2001) and McCoy v. United States, 266 F.3d 1245 (11th Cir. 2001 ) (see doc. 26 at 3).  However, neither of those cases stand for the proposition that the federal statute of limitations for § 2254 petitions does not apply to petitions alleging jurisdictional defects in the state trial court.

subject matter jurisdiction."); Frazier v. Crews, No. 2:11cv551, 2013 WL 1856507, at *4 (M.D. Fla. May 2, 2013) (unpublished) (same); King v. Hetzel, No. 2:10cv2701, 2013 WL 1767793, at *3 (N.D. Ala. Mar. 29, 2013) (unpublished) (same), *Report and Recommendation Adopted By*, 2013 WL 1760845 (N.D. Ala. Apr. 24, 2013).  Therefore, Petitioner is not entitled to review of the alleged jurisdictional errors in the state trial court proceedings.[11]

### 2.   Martinez

Petitioner contends any procedural default of his IATC claims asserted in Ground Nine was caused by the fact that he had no counsel in his state post-conviction proceedings; therefore, he is entitled to review of his pursuant to Martinez v. Ryan, — U.S. —, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012).  However, the Eleventh Circuit has determined that the reasoning of Martinez does not apply to the AEDPA's limitations period in § 2254 cases or any potential tolling of that period. *See* Arthur v. Thomas, 739 F.3d 611, 630 (11th Cir. 2014).  Therefore, Martinez affords Petitioner no relief from the federal time bar.

### 3.   Actual Innocence (Ground Five)

Petitioner argues he is entitled to review of his claims through the "actual innocence" exception to the time bar.  In McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013), the Supreme Court held that there is an "equitable exception" to the statute of limitations set forth in § 2244(d), but only when the petitioner presents new evidence that shows it is more likely than not that no reasonable juror would have convicted him.  133 S. Ct. at 1928, 1931, 1933.  The Court cautioned that "tenable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of [ ] new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting Schlup v. Delo, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) and citing House v. Bell, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006)).

The Supreme Court stated in Schlup:

---

[11] Documents related to these alleged jurisdiction issues (specifically, the Indictment, Amended Indictment, and the Uniform Commitment to Custody of the Department of Corrections) are the subject of Petitioner's "Motion for Rehearing RE: Motion for Production of Original Documents, Rule 1001–1003" (doc. 30).  Because he is not entitled to review of these issues, his motion will be denied.

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

513 U.S. at 327.  The Schlup standard is demanding, and a petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims only if he presents "'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'"  McQuiggin, 133 S. Ct. at 1936 (quoting Schlup, 513 U.S. at 316).  Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence.  See McQuiggin, 133 S. Ct. at 1935. As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]."  513 U.S. at 332; see also House, 547 U.S. at 537.

In support of his actual innocence claim, Petitioner asserts his co-defendant David Pentecost confessed that he actually killed Petitioner's mother, and there was no physical evidence that Petitioner was present when Pentecost killed her.  Petitioner additionally asserts his confession was coerced by law enforcement, and his plea was involuntary, because of his mental state at the time (i.e., depressed, suicidal, and psychotic) (see doc. 26 at 4–5).  Petitioner alleges the trial judge acknowledged at sentencing, "I do find from the evidence there is undeniable evidence beyond a reasonable doubt that he [Petitioner] was not the one who actually yielded [sic] the weapon in this case and probably was not even there in the room that evening." (see Ex. B at 199).

Evidence that David Pentecost in fact killed Petitioner's mother is not new evidence.  During the penalty phase of Petitioner's criminal proceedings, defense counsel submitted evidence that fingerprints of David Pentecost were found in the room where Petitioner's mother was murdered, but there were no fingerprints of Petitioner in the room (Ex. A at 21, 40–42).  Counsel also submitted evidence that the victim's blood was found on David Pentecost's clothing, but none was found on Petitioner's clothing (id. at 30–36).  Additionally, counsel submitted evidence that David Pentecost's blood was found on the murder weapon (a knife) (id. at 37).  Defense counsel also submitted

testimony that on the night of the murder, Petitioner told an officer that he did not kill his mother (*id.* at 69).  As the trial court stated at that hearing, the evidence showed beyond a reasonable doubt that Petitioner did not actually wield the knife that killed his mother, and he probably was not even in the room when she was killed.  However, Petitioner pleaded guilty to <u>felony</u> murder, and the transcript of the penalty phase proceeding references the factual basis for his plea, specifically, evidence that Petitioner and Pentecost drove to the victim's house together and parked three blocks away from her home even though parking was available in the front of her home; Petitioner broke the lock on the door to his mother's home; and Pentecost then killed her in her bedroom (*see* Ex. B at 141–45).  Evidence that David Pentecost actually did the killing, and that Petitioner was probably not in the room at the time, is not new; nor does this evidence suggest Petitioner is factually innocent of felony murder or armed robbery.  Therefore, he is not entitled to federal review of the time-barred claims through the actual innocence gateway.

 E. <u>Ground Twelve</u>

 In Ground Twelve, Petitioner contends the parole board arbitrarily added 120 months to his sentence, based upon the severity of the offense, twenty-five years after the trial court imposed sentence (*see* doc. 1 at 18; doc. 26 at 7).  He contends this decision subjected him to a more onerous sentence than originally imposed by the trial court, and violated his substantive and procedural due process rights (*id.*).

 As previously noted, Petitioner was sentenced to life imprisonment with a 25-year mandatory minimum on the felony murder count.  He appears to contest the parole board's setting a presumptive parole release date ("PPRD") for that offense.

 A state prisoner may challenge a decision of a state parole board in federal habeas; however, the petition is subject to the procedural requirements of § 2254.  *See* <u>Thomas v. Crosby</u>, 371 F.3d 782, 787–88 (11th Cir. 2004).  Here, the record does not indicate when the Florida Parole Commission ("FPC") issued its decision setting Petitioner's PPRD.  Therefore, the court is unable to determine whether the claim asserted in Ground Twelve is time-barred.  Accordingly, the court will deny Respondent's motion to dismiss only as to Ground Twelve.  The denial will be without prejudice to Respondent's (or the FPC's) reasserting the timeliness argument upon the court's serving the petition upon the FPC and providing it an opportunity to respond.

Accordingly, it is **ORDERED**:

1.      The clerk of court shall substitute Julie L. Jones as Respondent.

2.      Petitioner's "Motion for Rehearing RE: Motion for Production of Original Documents, Rule 1001–1003" (doc. 30) is **DENIED**.

And it is respectfully **RECOMMENDED**:

1.      That Respondent's motion to dismiss (doc. 18) be **GRANTED IN PART** as follows:

a.      Respondent's motion be **GRANTED** as to Grounds One through Five, Nine through Eleven, and Thirteen of Petitioner's habeas petition (doc. 1); and

b.      Respondent motion to dismiss be **DENIED without prejudice** as to Ground Twelve of Petitioner's habeas petition.

2.      That Grounds One through Eleven and Thirteen of Petitioner's habeas petition (doc. 1) be **DISMISSED with prejudice**.[12]

3.      That the matter be remanded to the undersigned for further proceedings on Ground Twelve of Petitioner's habeas petition.

At Pensacola, Florida, this 13<u>th</u> day of January 2015.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**

---

[12] As previously noted, Petitioner withdrew Grounds Six through Eight (*see* doc. 26 at 6); therefore, those claims should be dismissed with prejudice.

Case No.:  3:14cv195/MCR/EMT